# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| FIRST COMMERCE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW D. SHELDON,<br><br>Defendant. | Case No. Case No. 2:13-cv-01915-RFB-GWF<br>**ORDER** |

## I.    INTRODUCTION

Before the Court is Defendant Sheldon's Motion for Summary Judgment. ECF No. 26. This case arises from a personal guaranty between non-parties Triad Leasing & Financial, Inc. ("Triad") and non-party Elemental Compliance Services, Inc., a Nevada corporation ("Elemental"), who had entered into a lease agreement. For the reasons stated below the Court denies Defendant's Motion.

## II.    BACKGROUND

Plaintiff filed its Complaint on October 18, 2013. ECF No. 1.

Defendant filed a Motion to Dismiss on June 19, 2014. ECF No. 13. The Court denied this Motion on September 29, 2015. ECF No. 19.

Defendant filed a Motion for Summary Judgment on January 13, 2016. ECF No. 26.

The Court held a hearing on August 2, 2016. At that hearing, the Court denied Defendant's Motion for Leave to File Surreply. ECF No. 32. The Court took under submission Defendant's Motion for Summary Judgment. ECF No. 26.

### III. LEGAL STANDARD

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. UNDISPUTED FACTS

The following facts are undisputed. On March 2, 2007, Elemental Compliance Services, Inc., a Nevada corporation ("Elemental"), entered into an equipment lease for two "Street Sweepers" with Triad Leasing & Financial, Inc., an Idaho corporation ("Triad").

A personal guaranty, signed by Defendant Sheldon and non-party Philip Childers on behalf of Elemental, was included in the lease. The Lease provides the following Rental Payment Schedule: one payment of $37,500 was due "upon acceptance of equipment delivery" and fifty (50) monthly payments of $4,356 were due commencing April 2007. Monthly payments were to commence on April 6, 2007. On or about March 2, 2007, Philip Childers, President of Elemental, executed a document titled "Lease Addendum" providing that Nevada Sales and Use Tax of 7.75% would be added to each payment.

The Lease contains the following definition of default: "You will be in default under this Lease if any of the following events occur: (a) You, or any guarantor of this lease fail to make

any rental or other payment within a period of ten (10) days after the due date." The lease and the guaranty were assigned to Plaintiff First Commerce by Triad.

Elemental has gone out of business. Mr. Childers has filed for bankruptcy.

First Commerce pursued Mr. Sheldon as the guarantor of the lease, sending him a notice of default and a demand for payment on May 12, 2011. Mr. Sheldon has not made any payments to First Commerce on the guaranty.

## V. DISCUSSION

### A. Nevada Law Applies

#### 1. *Legal Standard*

To determine the applicable substantive law, a federal court sitting in diversity must apply the choice-of-law rules of the forum—in this case, Nevada. Narayan v. EGL, Inc., 616 F.3d 895, 898 (9th Cir. 2010). "Nevada's choice-of-law principles permit parties 'within broad limits to choose the law that will determine the validity and effect of their contract;'" so long as the fixed situs has a substantial relation with the transaction and is not contrary to the public policy of the forum. Progressive Gulf Ins. Co. v. Faehnrich, 752 F.3d 746, 751 (9th Cir. 2014) (internal citation omitted). Any choice of law provision set forth in a guaranty that conflicts with the underlying loan documents' choice of law provision will prevail. See Pentex Corp. v. Boyd, 904 P.2d 1024 (Nev. 1995) (internal citation omitted). In the absence of such a provision, Nevada courts apply the "substantial relationship" test. Consol. Generator-Nev., Inc. v. Cummins Engine Co., 971 P.2d 1251, 1253 (Nev. 1998).

To determine whether a state has a substantial relationship with a contract, a court considers the following five factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Id. at 1253-54.

/ / /

/ / /

- 3 -

### *2. Discussion*

The parties agree that the personal guaranty provides for a choice of forum clause, but does not set forth any choice of law provision. Plaintiff argues that Nevada law should apply based on Consol. Generator-Nev.'s holding. 971 P.2d 1251. In its original motion, Defendant does not argue that either Nevada or Idaho law apply, but argues instead that under either law, it is entitled to summary judgment. However, in reply, Defendant argues that Idaho law applies. The Court weighs the five factors as outlined in Consol. Generator-Nev. and finds that Nevada law applies here.

#### *a. The Place of Contracting*

The "place of contracting" is defined as "the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect." Rest. (Second) Conflicts of Law § 188, cmt. e. Defendant argues that acceptance occurred in Idaho, where their office is located, because the Lease provides that "[l]essee understands and agrees that Lessor shall have no obligation to pay for the Equipment until Lessee has 'accepted' the Equipment and Lessor has accepted the Lease at their office." D.'s Ex. 1 at 2. Plaintiff argues that the guaranty was accepted in Nevada, because that is where Sheldon signed the Lease.

The Court finds that the lease provision indicates that acceptance takes place at the Lessor's office, located in Idaho. Therefore, the first factor weighs in favor of applying Idaho law.

#### *b. The Place of Negotiation of the Contract*

The place of negotiation is "the place where the parties negotiate and agree on the terms of their contract." Rest. (Second) Conflicts of Law § 188, cmt. e. This factor is less important when parties have not met in person but rather negotiated their transaction by the telephone so that there is no one single place of negotiation and agreement. Id.

The parties agree that the negotiation of the contract occurred in both Nevada and Idaho. Therefore the second factor is neutral.

/ / /

/ / /

### c. The Place of Performance

Defendant argues that the performance subject to the personal guaranty of prompt payment occurred in Nevada with payment being sent to Idaho. Plaintiff argues that Mr. Sheldon lived in Nevada during the time of the contract, so Nevada is the place where his performance of the guaranty was to occur. The Court finds Plaintiff has the better argument here, and that in the context of payment as performance, performance is not where payment is sent but where it was sent from. Therefore the third factor weighs in favor of Nevada.

### d. The Location of the Subject Matter of the Contract

As to the situs of the subject matter of the contract, "When the contract deals with a specific physical thing, such as land or a chattel, or affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment, the location of the thing or of the risk is significant." Rest. (Second) of Conflict of Laws § 188 cmt. e.

Defendant argues that the underlying subject matter to the personal guaranty is a lease that was negotiated and executed in both Nevada and Idaho with equipment purchased and delivered from Washington. Plaintiff argues that the physical objects that the contract concerned were the two street sweepers that Elemental leased, the payments for which Mr. Sheldon had guaranteed. These street sweepers were located in Nevada. The risk was located in Nevada as both the lessor and the guarantors were located there.

The Court finds the Plaintiff has the better argument, and that because the street sweepers were the subject matter of the contract and were located in Nevada, this factor weighs in favor of Nevada.

### e. The Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties.

Defendant argues that the guarantors, Childers and Sheldon, were both residents of Nevada. The previous Lessor who was a beneficiary to the personal guaranty was incorporated and had its place of business in Idaho.

The Court finds that Nevada is where Sheldon and Childers were domiciled and where Elemental had its principal place of business. Triad was domiciled in Idaho, but is no longer a beneficiary, as the lease and the guaranty have since been assigned to First Commerce. The lease

- 5 -

indicates that, if the lease was assigned, the law of the state in which the third party maintains its principal place of business would apply. See Pl.'s Ex. B ¶ 18. Triad assigned its interest to Plaintiff, whose principal place of business is Oregon.

The Court finds that this factor weighs in favor of Nevada and Oregon, as the guarantors were domiciled in Nevada and the assignee's place of business is Oregon. The only relation Idaho has to this factor is that the *original* Lessor was incorporated in Idaho.

In conclusion, weighing all five factors, the Court finds that Nevada law applies.

### B. Plaintiff Has Standing to Pursue Its Claim

#### *1. Legal Standard*

Nevada law does not require the Court to interpret guaranty agreements in favor of the guarantor. See Dobron v. Bunch, 215 P.3d 35, 37-38 (Nev. 2009) ("we eliminate the construction rule that a guaranty agreement be strictly construed in any party's favor"). "'Under ... Nevada law, contracts of guarantee are subject to the statute of frauds.'" Tri-Pac. Commercial Brokerage, Inc. v. Boreta, 931 P.2d 726, 728 (Nev. 1997) (internal citation omitted). See NRS § 111.220.[1] For the statute of frauds to be satisfied by a guaranty, the agreement must contain the following elements: "(1) the names of the parties; (2) the terms and conditions of the contract; (3) the interest or property affected; and (4) the consideration to be paid therefor." Pentax Corp., 111 Nev. at 1299-1300. "Concerning guarantees, the name of the party whose debt is being guaranteed is the interest affected and is, therefore, one of the essential terms." Id. at 1300. If a guaranty lacks any essential term, it is nonbinding on the parties. Id.

Restatement (Third) of Suretyship and Guaranty § 13(1), states that any guaranty may be assigned unless: it would materially change the duty of the guarantor or materially increase the

---

[1] Plaintiff raises the argument that the statute of frauds arguably does not apply to guaranties. See Randono v. Turk, 86 Nev. 123, 131, 466 P.2d 218, 223 (1970) ("The guaranty of a note is not a promise to answer for the debt of the maker, and is not within the statute of frauds, when it is negotiated in consideration of value received by the guarantor, but it becomes the original and absolute obligation of the guarantor himself, whereby he promises to pay his own debt to the guarantee; that is to say, the debt he owes his guarantee for what he has received from the latter."). Defendant does not respond to this argument. The Court does not at this time resolve whether or not the statute of frauds necessarily applies, as it finds that, even if it does, it would be satisfied in this case.

1  burden or risk imposed on the guarantor; the assignment is forbidden by statute or is ineffective
2  as a matter of public policy; or the assignment is validly precluded by contract. No Nevada
3  Supreme Court case has addressed this section, specifically, though Dobron cites to the
4  Restatement regarding modern trends in suretyship guaranty. See Dobron, 215 P.3d at 37 ("This
5  conforms with the modern trend stated in Restatement (Third) of Suretyship and Guaranty,
6  section 14, comment c (1996)."). However, regarding assignments and contracts generally, the
7  Court has held that "[u]nder ordinary rules of contract law, a contractual right is assignable
8  unless assignment materially changes the terms of the contract or the contract expressly
9  precludes assignment." Easton Business Opportunities, Inc. v. Town Executive Suites-Eastern
10  Marketplace, LLC, 230 P.3d 827, 830 (Nev. 2010). The Easton court noted that "the law looks
11  with favor on the free assignability of rights and frowns on restrictions that would limit or
12  preclude assignability." Id.

### 2. Discussion

Defendant appears to argue that there is a presumption against assignment of guarantees, and argues that the clear language of the personal guaranty does not allow for an assignment therefore an assignee, Plaintiff, cannot enforce the guaranty. Plaintiff argues that guarantees are presumptively assignable in Nevada unless specific conditions are met under the Restatement.

The Court agrees that under general contract theory in Nevada, contract rights are presumptively assignable, and there is no authority to suggest that a personal guaranty in this context would depart from this general rule. In addition, the Court finds that the assignment of the interest weighs in favor of assignment: Triad's assignment of its interest—rather than the guarantor's assignment of the guaranty it owes—does not, in the Court's view, materially alter the terms of the guaranty or underlying contract. Therefore the Court finds that Plaintiff may appropriately assert its rights as Triad's assignee to the personal guaranty by Defendant. Plaintiff therefore has standing to pursue the breach of guaranty claim.

///
///
///

### C. Plaintiff's Claim is Not Barred By the Statute of Limitations

#### *1. Legal Standard*

NRS Chapter 11 considers the limitations of actions other than for the recovery of real property. Specifically, NRS 11.190(1)(b) states that "[a]n action upon a contract, obligation or liability founded upon an instrument in writing" must be brought within six years.

However, under Nevada's UCC, "[a]n action for default under a lease contract, including breach of warranty or indemnity, must be commenced within 4 years after the cause of action accrued." NRS. § 104A.2506(1). "NRS Chapter 104A sets forth Nevada's Uniform Commercial Code as it applies to leases. The article applies to any transaction, regardless of form, that creates or modifies a lease. NRS 104A.2102; NRS 104A.2208." James Hardie Gypsum (Nevada) Inc. v. Inquipco, 929 P.2d 903, 906 (Nev. 1996) disapproved of by Sandy Valley Associates v. Sky Ranch Estates Owners Ass'n, 35 P.3d 964 (Nev. 2001). "[I]n 1989, the legislature adopted the UCC provisions regarding leases. NRS 104A.2101–104A.2532….Leases entered into after that date are subject to the statute of frauds provisions set forth in NRS 104A.2201." Edwards Indus., Inc. v. DTE/BTE, Inc., 923 P.2d 569, 573 n. 10 (Nev. 1996). In the comment to the UCC regarding its scope, the Legislature writes: "This Article governs transactions as diverse as the lease of a hand tool to an individual for a few hours and the leveraged lease of a complex line of industrial equipment to a multi-national organization for a number of years."

Lavi v. Eighth Jud. Dist. Ct. lays out the background behind guaranty law in Nevada regarding transactions secured in whole or in part by realty. "Nevada's one-action rule, set forth in NRS 40.430, says that 'there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate. That action must be in accordance with the provisions of NRS 40.430 to 40.459, inclusive.' NRS 40.430(1). This statute … requires a lender to proceed against a borrower's pledged security before seeking a deficiency judgment against the borrower, thereby preventing the lender from inflating its recovery with an unfairly low credit bid….Before 1986, Nevada's one-action rule and its associated protections applied only to borrowers, not guarantors….Consistent with prevailing law, before 1986, suits on guaranties in Nevada were governed by general contract principles,

not the foreclosure statutes….But in 1986, this court decided First Interstate Bank of Nevada v. Shields, 102 Nev. 616, 730 P.2d 429 (1986). Shields revolutionized Nevada guaranty law by…extending the one-action rule and its associated protections to guarantors….In response, the Legislature limited, but did not entirely invalidate, Shields." Lavi v. Eighth Jud. Dist. Ct., 325 P.3d 1265, 1269-71 (Nev. 2014) (internal citations omitted).

However, an unpublished Nevada Supreme Court decision appears to construe Shields as not overruling the general principal that guaranties are separate from underlying contracts. In that case, the Court found that "[a]s to the automatic bankruptcy stay, the stay is generally applicable to the debtor only, not a guarantor." Creative Touch Interiors v. Second Judicial Dist. Court of State ex rel. Cty. of Washoe, No. 63457, 2013 WL 5429923, at *1 (Nev. Sept. 20, 2013). The Nevada Supreme Court went on to cite to "Mfrs. & Traders Trust Co. v. Eighth Judicial Dist. Court, 94 Nev. 551, 556, 583 P.2d 444, 447 (1978) (holding that a guaranty is a contract separate from the underlying debt obligation), overruled on unrelated grounds by First Interstate Bank of Nev. v. Shields, 102 Nev. 616, 730 P.2d 429 (1986)."

"[W]here contract obligations are payable by installments, the limitations statute begins to run only with respect to each installment when due." Clayton v. Gardner, 813 P.2d 997, 999 (Nev. 1991).

### 2. Discussion

Defendant argues that the action concerns the breach of a lease agreement, which has a four year statute of limitations under Chapter 104A, Nevada's UCC. Plaintiff argues that the action concerns a personal guaranty, not a lease agreement, which has a six year statute of limitations under Chapter 11. In support of this argument, Plaintiff cites pre-Shields opinions, and does not address how Shields may or may not have altered guaranty law. In reply, Defendant argues that after Shields, personal guaranties are not subject to a longer statute of limitations, as they are governed by the lease contract.

The Court finds that the personal guaranty is separate from the lease agreement for the purposes of statute of limitations, and that the cases to which Plaintiff cites were not affected by Shields, which held that the one-action rule extended to guarantors in the context of transactions

secured by realty, which is not the case here. <u>Shields</u> appears to deal specifically with the one-action rule laid out in NRS 40.430, which states that "there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate. That action must be in accordance with the provisions of NRS 40.430 to 40.459, inclusive." "This statute dates back to statehood days, and, in general, requires a lender to proceed against a borrower's pledged security before seeking a deficiency judgment against the borrower, thereby preventing the lender from inflating its recovery with an unfairly low credit bid." <u>Lavi v. Eighth Jud. Dist. Ct.</u>, 325 P.3d 1265, 1269 (Nev. 2014).

Defendant does not suggest that any case law has disrupted the general principle that personal guaranties are separate contracts. In reply, Defendant disputes Plaintiff's evidence as it relates to the last date of payment. Namely, Defendant argues that Plaintiff's allegation that the last payment made was on October 19, 2007 is based on inadmissible evidence. However, as stated at the hearing, the Court declines to address this argument as it is being raised for the first time in Defendant's reply brief. Because the Court has denied Plaintiff's motion for leave to file surreply in response to this argument, the Court does not find it appropriate to resolve the argument as to whether the last payment was made within the four year statute of limitations at this time. The Court finds that the payment dates are issues of material fact still disputed by the parties.

Therefore, the Court denies Defendant's Motion. ECF No. 26.

VI.   **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is DENIED.

DATED <u>29th</u> day of September 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**